UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

---

THEODORE BOHN,

                         Plaintiff,

              -v-

THE CITY OF NEW YORK, JOHN DOE 1–50,
JANE DOE 1–10, A, B, *and* C,

                      Defendants.

24 Civ. 9283 (PAE) (GS)

OPINION & ORDER

---

PAUL A. ENGELMAYER, District Judge:

This case involves claims by *pro se* plaintiff Theodore Bohn, a lawyer, under 42 U.S.C.

§ 1983.  In brief, he alleges that numerous unidentified firefighters, police officers, and other

emergency-services personnel have unlawfully surveilled and harassed him since the 1990s, in

retaliation for a civil-rights lawsuit he had filed then on behalf of a client.  Pending now is a

motion to dismiss the Amended Complaint for failure to state a claim under Federal Rule of Civil

Procedure 12(b)(6), by defendant the City of New York (the "City").  For the following reasons,

the Courts grants the motion.

I.       **Factual Background**[1]

       A.     **The Parties**

---

[1] The Court draws the facts in this decision from the Amended Complaint ("AC") and the
materials incorporated by reference in it.  Dkt. 32; *see DiFolco v. MSNBC Cable LLC*, 622 F.3d
104, 111 (2d Cir. 2010) ("In considering a motion to dismiss for failure to state a claim pursuant
to Rule 12(b)(6), a district court may consider the facts alleged in the complaint, documents
attached to the complaint as exhibits, and documents incorporated by reference in the
complaint.").  In resolving defendant's motion to dismiss under Rule 12(b)(6), the Court accepts
all factual allegations in the AC as true and draws all reasonable inferences in Bohn's favor.  *See
Koch v. Christie's Int'l PLC*, 699 F.3d 141, 145 (2d Cir. 2012).

Bohn is a gay man and civil-rights attorney who has practiced law for approximately 38 years.  Dkt. 32 ("AC") ¶ 1.  The City is a municipal corporation that encompasses the Fire Department of the City of New York ("FDNY") and New York City Police Department ("NYPD").  *Id.* ¶ 2.  John Does 1–50 and Jane Does 1–10 are members of the FDNY or NYPD. *Id.* ¶¶ 3–4.  Defendants "A," "B," and "C" are "corporate entities which may have had involvement in the complained of activity, but whose identities are presently unknown" to Bohn. *Id.* ¶ 5.

**B.    The AC's Claims**

The AC alleges that, since the 1990s, a "criminal enterprise" "comprised of street gangs and pedophiles at one end, acting in concert with firemen, police, EMTs, and members of the Irish mafia at the other," has illegally surveilled and harassed Bohn in retaliation for representing "Sandra Stapen," an AIDS educator, in a civil-rights lawsuit against an FDNY firefighter.  *Id.* ¶ 9 & n.4 (cleaned up).

In "the 1990s," Bohn represented Stapen in a lawsuit against "Finn," an FDNY firefighter who had assaulted Stapen.  *Id.* ¶ 9.  Bohn "prevailed on summary judgment" based on Finn's guilty plea in a related criminal case.  *Id.* ¶ 13.  Before trial on damages in the civil case, Finn verbally threatened Bohn by telephone.  *Id.* ¶ 14.  Finn defaulted on damages and judgment was entered against him.  *Id.* ¶¶ 16–17.

Soon after, "strange things [] began to happen."  *Id.* ¶ 19.  Bohn "could barely walk a city block safely.  Gang members would appear and be waiting at the next avenue.  Travel by most forms of public transportation soon became a thing of the past; it has remained so ever since." *Id.* ¶ 18.  For example:

2

- An "anti-gay thug" posed as a prospective client for Bohn. During an ostensible consultation, the sham client "repeatedly reached into a paper bag at his feet and then rapidly stood up." *Id.* ¶¶ 20–21.

- Fire alarms went off during Bohn's depositions and oral arguments. *Id.* ¶ 25.

- Bohn's office and home were burglarized, and evidence relevant to this lawsuit was stolen. *Id.*

- NYPD and FDNY vehicles, including ambulances, pursued Bohn, "sometimes shutting off their lights and sirens once they pull[ed] up alongside or over[took]" him. *Id.*

- "Dozens of cybercrimes" occurred. *Id.*

- Bohn experienced "relentless stalking" by "uniformed personnel" and vehicles with "decommissioned plates." *Id.*

- Bohn's gym locker was "broken into within minutes." *Id.* ¶ 26.

- A waiter "tossed silverware on the table where [Bohn] had just been seated at a restaurant on the Upper West Side." The restaurant manager accused Bohn of having stolen the waiter's tip, stating that a "fireman saw you do it." *Id.* ¶ 27.

- Bohn's mother left a shopping cart unattended and, when she returned, found that a box of condoms had been placed in it. *Id.* ¶ 29.

- NYPD officers repeatedly ticketed Bohn's vehicle. Once, Bohn returned to his vehicle with approximately four minutes of time left on the meter to find two NYPD vans idling nearby, "poised to issue a citation." *Id.* ¶ 30.

By 2002, as a result of these events, Bohn was forced to move from New York City to New Jersey. *Id.* ¶ 31. Between 2004 and 2012, however, he was stalked in Suffolk County in New York by "several firemen," including a "Robert Perez." *Id.* And firemen in New Jersey began "stalking" Bohn shortly after he moved there. *Id.* ¶ 32. "Rarely a day has passed since the early 2000s that firemen and confederates have not engaged in stalking, the use of lights and sirens without an underlying incident, or related criminal conduct." *Id.* ¶ 33 (cleaned up). For example:

- On March 3, 2003, Bohn "noticed a heavy white male" inside New York City Summons Court, who "kept opening and closing his hand." When Bohn notified a

court security officer, the officer spoke with the man and then stated, "There's no need to worry—he's a [plainclothes] police officer." The plainclothes officer walked out of the courthouse and "met then-FDNY Commissioner Cassano." When Bohn, acting under "a pretext," asked the officer for his name, the officer replied, "Fenford." In fact, this officer was "Timony Fenfert," "who would later be implicated in an NYPD conspiracy to frame adult gay men as prostitutes." *Id.* ¶¶ 38–39 (cleaned up).

- In February 2011, in New Jersey, a police van pulled Bohn over "with flashing lights and sirens," but did not issue him a ticket. Bohn recognized one of its occupants "from an incident in Manhattan." "Years later, through service of a subpoena," Bohn learned that the police van's license plate was associated with the sheriff's department in Essex County, New Jersey. *Id.* ¶¶ 40–47.

- On December 31, 2012, an unidentified man flirted with Bohn's then-boyfriend at a Manhattan restaurant, which "had the intended effect of causing discord between [Bohn] and [his] then-boyfriend." Later that day, Bohn saw a firefighter who had stalked him before. *Id.* ¶¶ 50–56 (cleaned up).

- In 2015, while waiting at a bus stop in Manhattan, Bohn saw a uniformed firefighter shake hands with the driver of an "undercover vehicle." An FDNY ladder truck then picked up the firefighter. Soon after, an unidentified individual "shoved" Bohn, and then he and his "confederates . . . ran off." Bohn believes this individual had, on another occasion, acted "as lookout" for a person who had slashed Bohn's tires. *Id.* ¶¶ 59–61.

- On June 23, 2016, Bohn was representing an individual in Brooklyn housing court, and saw FDNY employees enter the courthouse. Later that day, when Bohn traveled back to Manhattan by taxi, two FDNY ambulances—one with its emergency lights and siren activated, the other with only its emergency lights on—passed Bohn's taxi. Approximately two and a half weeks later, Bohn suffered a heart attack. *Id.* ¶¶ 62–65.

- On October 4, 2016, when Bohn left a cardiologist's office in Manhattan, he saw an ambulance and FDNY truck "waiting at the exit of the building." *Id.* ¶ 66.

- On December 6, 2021, a "particularly representative exemplar" of defendants' "surveillance and tracking of [Bohn's] location" occurred. While Bohn was meeting an individual for coffee in Manhattan, an FDNY ambulance, using its lights and sirens, parked nearby. But, according to FDNY's Freedom of Information Law unit, there is no record of any 911 call concerning this incident. *Id.* ¶¶ 67–69.

- On June 1, 2025, Bohn was driving to a community garden in New Jersey when he saw a large, white SUV with New Jersey firefighter insignia on its windshield. The vehicle did not have a front license plate and had "reflective film" over its rear plate. Shortly thereafter, the same vehicle appeared at the community garden. Approximately two weeks later, Bohn saw the same vehicle "speed off" from having been parked across the street from his home. *Id.* ¶¶ 79–81.

4

The AC brings two § 1983 claims: that defendants' alleged decades-long "surveillance," "stalking," and "pretextual use of lights and sirens" violate the First and Fourth Amendments. *Id.* ¶¶ 86–90, 95–98.[2]

### C.    Relevant Procedural History

On December 5, 2024, Bohn initiated this action. Dkts. 1, 4. On December 16, 2024, the Court referred the case to United States Magistrate Judge Gary Stein for general pretrial supervision. Dkt. 7. On May 5, 2025, the City moved to dismiss the original Complaint. Dkts. 22–24. On May 6, 2025, the Court ordered Bohn to file an amended complaint or oppose the motion to dismiss. Dkt. 25. On August 8, 2025, Bohn filed the AC, the operative complaint today. Dkt. 32. On August 29, 2025, the City filed this motion to dismiss. Dkts. 35–37. On September 28, 2025, Bohn opposed, untimely filing a 51-page brief. *See* Dkt. 42 ("Opp'n"). On November 3, 2025, the City replied. Dkt. 47. On January 2, 2026, Bohn filed a stipulation of voluntary dismissal as to the two § 1985 counts in the AC, leaving only the two § 1983 counts. Dkt. 50.

## II.    Applicable Legal Standards Under Rule 12(b)(6)

To survive a motion to dismiss under Rule 12(b)(6), a complaint must plead "enough facts to state a claim to relief that is plausible on its face." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007). A claim is facially plausible "when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). A complaint is properly dismissed where "the allegations in a complaint, however true, could not raise a claim of entitlement to relief."

---

[2] The AC brought two other claims, both under § 1985(3), but Bohn has voluntarily dismissed these. Dkt. 50 (stipulation of voluntary dismissal).

*Twombly*, 550 U.S. at 558. In resolving a motion to dismiss, the Court must assume all well-pleaded facts to be true, "drawing all reasonable inferences in favor of the plaintiff." *Koch v. Christie's Int'l PLC*, 699 F.3d 141, 145 (2d Cir. 2012). That tenet, however, does not apply to legal conclusions. *See Iqbal*, 556 U.S. at 678. Pleadings that offer only "labels and conclusions" or "a formulaic recitation of the elements of a cause of action will not do." *Twombly*, 550 U.S. at 555. "A court may dismiss a claim as 'factually frivolous' if the sufficiently well-pleaded facts are 'clearly baseless'—that is, if they are 'fanciful,' 'fantastic,' or 'delusional.'" *Gallop v. Cheney*, 642 F.3d 364, 368 (2d Cir. 2011) (quoting *Denton v. Hernandez*, 504 U.S. 25, 32–33 (1992)).

## III.   Discussion

The Court first addresses whether Bohn, as a lawyer proceeding *pro se*, is entitled to the solicitude that would ordinarily be accorded *pro se* litigants. The Court then evaluates whether the AC states plausible claims under § 1983. Finding that it does not, the Court lastly decides whether to grant Bohn leave to amend his pleading again.

### A.   Special Solicitude

A court must construe a *pro se* litigant's submissions liberally and interpret them to raise the strongest arguments they suggest. *Triestman v. Fed. Bureau of Prisons*, 470 F.3d 471, 474–75 (2d Cir. 2006) (citation omitted). However, "a lawyer representing himself ordinarily receives no such solicitude at all." *Tracy v. Freshwater*, 623 F.3d 90, 102 (2d Cir. 2010).

Bohn is an attorney currently registered in New York. *See* AC ¶ 1 (self-describing as "civil rights attorney who has been practicing [law] for almost thirty-eight years"); *see also id.*

6

¶¶ 13–17, 37, 40, 62 (referencing Bohn's court appearances).[3]  His opposition to this motion states:  "Plaintiff has neither requested, nor requires the special deference accorded *Pro Se* litigants.  I have been admitted to practice for 37 years.  I am an experienced litigator.  I expect my pleading to be evaluated under the same standard applicable to pleadings filed by represented parties."  Opp'n at 5 n.1.

The Court thus does not liberally construe the AC or Bohn's pleadings.[4]  *See, e.g.*, *Harbulak v. Suffolk Cnty.*, 654 F.2d 194, 198 (2d Cir. 1981) (no special solicitude for lawyer representing himself); *McNaughton v. de Blasio*, No. 14 Civ. 221, 2015 WL 468890, at *4 (S.D.N.Y. Feb. 4, 2015) (same), *aff'd*, 644 F. App'x 32 (2d Cir. 2016) (summary order); *Manchanda v. Reardon*, No. 23 Civ. 9292, 2024 WL 382116, at *4 (S.D.N.Y. Feb. 1, 2024) (same), *appeal dismissed*, 2024 WL 4196867 (2d Cir. Aug. 14, 2024), *cert. denied*, 145 S. Ct. 548 (2024).

### B.      The AC's § 1983 Claims

The AC brings two § 1983 claims: that defendants' alleged decades-long surveillance, stalking, and "pretextual use of lights and sirens" violate, respectively, the First and Fourth Amendments.  AC ¶¶ 86–90, 95–98.  The City argues that the AC fails to state a claim, under Rule 12(b)(6).[5]  The City is correct.

---

[3] The Court has independently confirmed, via the publicly available attorney-search function of the New York state court system, that Bohn is actively registered as of this decision.

[4] For the reasons stated below, even if the Court had accorded Bohn the solicitude due a non-lawyer *pro se* litigant, the AC does not state a viable claim.

[5] The City also argues that the AC (1) does not comply with Rule 8's requirement of "a short and plain statement" showing entitlement to relief, and (2) relies on time-barred allegations.  These arguments are substantial, but the Court, in light of its holding that the AC does not state a plausible claim, does not reach them.

"A municipality cannot be made liable under § 1983 by application of the doctrine of *respondeat superior*, but rather the plaintiff must demonstrate that, through its deliberate conduct, the municipality was the moving force behind the alleged injury." *Lucente v. County of Suffolk*, 980 F.3d 284, 297 (2d Cir. 2020) (cleaned up); *see Monell v. Dep't of Soc. Servs.*, 436 U.S. 658, 694 (1978). "[T]o hold a city liable under § 1983 for the unconstitutional actions of its employees, a plaintiff is required to plead and prove three elements: (1) an official policy or custom that (2) causes the plaintiff to be subjected to (3) a denial of a constitutional right." *Wray v. City of New York*, 490 F.3d 189, 195 (2d Cir. 2007) (quoting *Batista v. Rodriguez*, 702 F.2d 393, 397 (2d Cir. 1983)).

There are four ways to establish the existence of an official policy or custom—the first element of a *Monell* claim. A plaintiff may plead that the constitutional violation was caused by:

> (1) a formal policy officially endorsed by the municipality; (2) actions taken by government officials responsible for establishing the municipal policies that caused the particular deprivation in question; (3) a practice so consistent and widespread that, although not expressly authorized, constitutes a custom or usage of which a supervising policy-maker must have been aware; or (4) a failure by policymakers to provide adequate training or supervision to subordinates to such an extent that it amounts to deliberate indifference to the rights of those who come into contact with the municipal employees.

*Brandon v. City of New York*, 705 F. Supp. 2d 261, 276–77 (S.D.N.Y. 2010) (citation omitted).

The AC here claims that Bohn's interactions with firefighters and police officers in New York and New Jersey during the past 30-some years reflect a nefarious conspiracy by the FDNY and NYPD to stalk and harass him. It claims that this campaign is in retaliation for his having represented, in the 1990s, an AIDS educator in a civil lawsuit against an FDNY firefighter who had assaulted her. Taking all non-conclusory allegations as true, the Court finds that the AC does not plausibly claim a violation of either the First or Fourth Amendment, or that the City had

8

an official policy or custom of violating such constitutional rights, as required for *Monell* claims to survive a motion to dismiss.

The AC's leaps of logic are plainly delusional. Some of its allegations are of quotidian occurrences: *e.g.*, seeing first responders drive in Manhattan with their vehicles' sirens and emergency lights on; receiving parking tickets and observing traffic-enforcement officers prepare to issue these when meters ran low; hearing firefighters talking with police officers; being inconvenienced by fire alarms going off at inopportune times; and seeing FDNY ambulances parked in Manhattan. *See, e.g.*, AC ¶¶ 25, 30, 33, 64–66. Others are of "strange," isolated events: *e.g.*, Bohn's mother finding a box of condoms in her shopping cart that she did not place there; the reappearance of unidentified individuals who had earlier surveilled Bohn; and an unknown person "shoving" Bohn near a bus stop in Manhattan. *Id.* ¶¶ 29, 61, 79–81. But, even taken as true that these events occurred over multiple decades, it is purely conjectural that these were part of an unlawful conspiracy by the FDNY and NYPD to retaliate against Bohn for his having brought a civil-rights lawsuit some 30 years ago. The AC's leap to these conclusions is manifestly fanciful. *See Neitzke v. Williams*, 490 U.S. 319, 328 (1989) ("federal district judges are all too familiar" with "claims describing fantastic or delusional scenarios").

Indeed, in similar cases, courts in this District have dismissed *Monell* claims, brought by *pro se* attorneys, alleging that random occurrences bespoke conspiracies by state actors to violate the Constitution. *See, e.g.*, *McNaughton*, 2015 WL 468890, at *1, 6–10; *Manchanda*, 2024 WL 382116, at *4, 10–11. Courts in this Circuit commonly dismiss similarly delusional claims. *See, e.g.*, *Arcamone v. Kopnisky*, 857 F. App'x 694, 697 (2d Cir. 2021) (summary order) (affirming dismissal where *pro se* plaintiff's allegations were "factually frivolous, rising to the level of the irrational or the wholly incredible" (cleaned up)); *Bey v. Ponte*, No. 17 Civ. 3476,

9

2017 WL 4075177, at *1, 3–4 (E.D.N.Y. Sept. 13, 2017) (dismissing "delusional" claims by *pro se* plaintiff, alleging ostensible campaign of retaliatory "organized stalking"); *Campbell v. Columbia Univ.*, No. 22 Civ. 10164, 2023 WL 6038024, at *3–4, 7–8 (S.D.N.Y. Sept. 15, 2023) (dismissing *pro se* plaintiff's "fanciful" claims concerning "far-reaching conspiracy").

The Court thus holds that the AC's § 1983 claims do not plausibly state a claim, under Rule 12(b)(6). *See, e.g.*, *Arcamone*, 857 F. App'x at 697; *McNaughton*, 2015 WL 468890, at *1, 6–10; *Manchanda*, 2024 WL 382116, at *4, 10–11.[6]

### C.   Leave to Amend

The AC states that it "will necessarily have to undergo successive amendment(s) . . . as discovery progresses," AC ¶ 6, although Bohn's opposition does not seek leave to amend.  Bohn has already had, and taken, the opportunity to amend his original complaint in response to the City's motion to dismiss.  Further amendment would be futile because neither the AC nor Bohn's opposition—which ran 51 pages, violating Local Civil Rule 7.1(c) and the Court's Individual Rule 3(C)—identifies allegations sufficient for any of his claims to survive.  *See, e.g.*, *Manchanda*, 2024 WL 382116, at *12 (dismissing *pro se* lawyer's amended complaint and denying leave to amend as futile); *McNaughton*, 2015 WL 468890, at *16 (same); *see also Arcamone*, 857 F. App'x at 697 (affirming dismissal of *pro se* plaintiff's "irrational allegations" without leave to amend because such would have been futile); *Campbell*, 2023 WL 6038024, at *8 (similar).

---

[6] The Court also dismisses the AC's § 1983 claims against the non-City defendants: to wit, all John and Jane Does, and unidentified corporate entities "A," "B," and "C."  For the reasons stated above, the AC does not plausibly state any constitutional violations by these to trigger liability under § 1983—nor have any of these individuals and entities been served.  *See, e.g.*, *Bey*, 2017 WL 4075177, at *4 (dismissing claims against unserved, unidentified defendants in § 1983 action by *pro se* plaintiff who had alleged baseless stalking conspiracy).

## CONCLUSION

For the above reasons, the Court grants the City's motion to dismiss the remaining counts in the AC, with prejudice and without leave to amend, for failure to state a claim under Rule 12(b)(6). The Court respectfully directs the Clerk of Court to mail a copy of this decision to Bohn at the address on file; terminate all pending motions; and close this case.

SO ORDERED.

_Paul A. Engelmayer_

PAUL A. ENGELMAYER
United States District Judge

Dated: March 23, 2026
   New York, New York

11